TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE S. AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
  1100/1300 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone: (213) 894-6527/2424/3819
  Facsimile: (213) 894-6269/0141
  E-mail: Scott.Paetty@usdoj.gov
     Catherine.S.Ahn@usdoj.gov
     Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
  1400 New York Avenue NW, 3rd Floor
  Washington, DC 20530
  Telephone: (202) 320-0539
  Facsimile: (202) 514-0152
  E-mail: Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW-4 |
|    Plaintiff, | PLEA AGREEMENT FOR DEFENDANT TAMARA DADYAN |
|      v. | |
| RICHARD AYVAZYAN,<br> aka "Richard Avazian" and<br>  "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br> aka "Marietta Abelian" and<br>  "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br> aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br> aka "Mike Grigoryan," and | |

```
        "Anton Kudiumov,"
ARMAN HAYRAPETYAN,
EDVARD PARONYAN,
   aka "Edvard Paronian" and
        "Edward Paronyan," and
VAHE DADYAN,

            Defendants.
```

1.   This constitutes the plea agreement between TAMARA DADYAN ("defendant") and the United States Attorney's Office for the Central District of California and the United States Department of Justice, Criminal Division, Fraud Section (collectively referred to herein as "the Offices") in the above-captioned case.  This agreement is limited to the Offices and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the Offices and provided by the Court, appear and plead guilty to **counts 1, 24, and 26** of the first superseding indictment in <u>United States v. Richard Ayvazyan et al.</u>, CR No. 20-579(A)-SVW, which charge defendant with conspiracy to commit wire fraud and bank fraud, aggravated identity theft, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1349, 18 U.S.C. § 1028A(a)(1), and 18 U.S.C. § 1956(h), respectively.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

i.   Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j.   Complete the Financial Disclosure Statement on a form provided by the Offices and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the Offices by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the United States Attorney's Office Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

1       k. Authorize the Offices to obtain a credit report upon

2    returning a signed copy of this plea agreement.

3       l. Consent to the Offices inspecting and copying all of

4    defendant's financial documents and financial information held by the

5    United States Probation and Pretrial Services Office.

6      3. Defendant further agrees:

7       a. To forfeit all right, title, and interest in and to

8    any and all monies, properties, and/or assets of any kind, derived

9    from or acquired as a result of the illegal activity to which

10   defendant is pleading guilty, specifically including, but not limited

11   to, the following:

12       i. $12,520.00 in U.S. Currency seized during the

13   execution of a federal search warrant on November 5, 2020, in Encino,

14   California, at the residence of defendant and Artur Ayvazyan;

15       ii. $3,032.23 in bank funds seized pursuant to a

16   federal seizure warrant executed on or about January 22, 2021, from

17   Bank of the West account ending in '0531 in the name of Tamara

18   Dadyan; and

19       iii. $189,430.85 in bank funds seized pursuant to a

20   federal seizure warrant executed on or about January 22, 2021, from

21   Bank of the West account ending in '5682 in the name of Proactive

22   Home Health Care Inc.

23       iv. Certain real property referred to in the first

24   superseding indictment as Residential Property 1, located at 4910

25   Topeka Drive, Tarzana, in the County of Los Angeles, State of

26   California, APN 2176-029-031;

27       v. Certain real property referred to in the first

28   superseding indictment as Residential Property 2, located at 834

4

Calle La Primavera, Glendale, in the County of Los Angeles, State of California, APN 5663-036-033; and

                    vi.   Certain real property referred to in the first superseding indictment as Residential Property 3, located at 74203 Anastacia Lane, Palm Desert, in the County of Riverside, State of California, APN 694-331-008(collectively, the "Forfeitable Property").

(collectively, the "Forfeitable Property").

        b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the assets.

        c.   That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

        d.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

        e.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of herself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right she may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

f. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g. Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

h. To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

i. To fill out and deliver to the Offices a completed financial statement listing defendant's assets on a form provided by the Offices.

j. That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

k. With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of

Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

### THE OFFICES' OBLIGATIONS

4.   The Offices agree to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the first superseding indictment and the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1.  The defendant understands and agrees that the Offices will not move for a third point for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b), and defendant agrees that a reduction pursuant to U.S.S.G. § 3E1.1(b) for acceptance of responsibility is not appropriate or warranted based on defendant's plea one (1) day prior to trial.

### NATURE OF THE OFFENSES

5.   Defendant understands that for defendant to be guilty of the crime charged in **count one**, that is, Conspiracy to commit wire

fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, the following must be true:

First, beginning by at least in or about March 2020, and continuing to at least in or about October 2020, there was an agreement between two or more persons to commit at wire fraud, in violation of Section 1343 of Title 18 of the United States Code, and/or bank fraud, in violation of Section 1344(2) of Title 18 of the United States Code; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

6. The objects of the conspiracy charged in count one are wire fraud and bank fraud. In order for a person to be found guilty of wire fraud, in violation of 18 U.S.C. § 1343, the following must be true:

First, the person knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. Deceitful statements of half-truths may constitute false or fraudulent representations;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, another person to part with money or property;

Third, the person acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the person used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

In order for a person to be found guilty of bank fraud, in violation of 18 U.S.C. § 1344(2), the following must be true:

First, the person knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises;

Second, the person knew that the statements or promises were false;

Third, the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

Fourth, the person acted with the intent to defraud; and

Fifth, the financial institution was federally insured.

7.    Defendant understands that for defendant to be guilty of the crime charged in **count 24**, that is, aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1), the following must be true:

First, defendant knowingly possessed without legal authority a means of identification of another person;

Second, defendant knew that the means of identification belonged to a real person; and

Third, defendant did so during and in relation to bank fraud, in violation of 18 U.S.C. § 1344(2), as charged in count nineteen of the first superseding indictment.  The government need not establish that the means of identification of another person was stolen.

9

8.    Defendant understands that for defendant to be guilty of the crime charged in **count 26,** that is, Conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h), the following must be true:

First, Defendant agreed with one of more co-conspirators to engage in money laundering, in violation of Section 1956(a)(1)(B)(i) of Title 18 of the United States Code; and

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

9.    The object of the conspiracy charged in count 26 is money laundering, in violation of Section 1956(a)(1)(B)(i) of Title 18.  In order for a person to be found guilty of that offense, the following must be true:

First, the person conducted a financial transaction involving property that represented the proceeds of wire fraud;

Second, the person knew that the property represented the proceeds of some form of unlawful activity; and

Third, the person knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and/or control of such proceeds.

PENALTIES AND RESTITUTION

10.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, as charged in **count one,** is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in **count 24** of the first superseding indictment, is: two years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in count 24 of the first superseding indictment, is a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

13.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(h), as charged in **count 26**, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

14.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 52 years' imprisonment; a 5-year period of supervised release; a fine of $1,750,000 or twice the gross gain or gross loss resulting from

the offenses, whichever is greatest; and a mandatory special assessment of $300.[1]

15.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the Offices' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $18,016,141.26, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

16.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that

---

[1] Defendant understands that there is case law suggesting that the term of supervised release on **count 24** could be imposed to run consecutively to the term of supervised release imposed on counts one and 26.  While the Offices do not intend to seek a consecutive term of supervised release, defendant understands that if the Court were to impose a consecutive term of supervised release, the maximum term of supervised release for the counts of conviction would be eight years, rather than five years as stated in the text above.

if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

17.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to felonies and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

18.   Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty

in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his/her attorney or the Court, can predict to an absolute certainty the effect of his/her convictions on his/her immigration status.  Defendant nevertheless affirms that he/she wants to plead guilty regardless of any immigration consequences that his/her pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

19.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the Offices agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 21 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in or about March 2020, defendant agreed with her husband, co-defendant Artur Ayvazyan; her brother-in-law, co-defendant Richard Ayvazyan; her sister-in-law, co-defendant Marietta Terabelian; her cousin, co-defendant Vahe Dadyan, and others to submit fraudulent applications for loans through the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") program to lenders, including federally-insured financial institutions A, B, C, D, E, G, and H, and non-federally insured lending institution F, as identified in the first superseding indictment, and the United States Small Business Administration

1  ("SBA").  The false and fraudulent information defendant agreed with

2  co-defendants Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan,

3  Vahe Dadyan and others to provide to those lenders and the SBA

4  included: false applicant names, false information about the number

5  of employees and payroll of the businesses purportedly applying for

6  the loans, and false information about the owners of the bank

7  accounts into which the loan proceeds would be deposited, all of

8  which information was material to the SBA and the lenders.

9       Defendant and her co-conspirators, Richard Ayvazyan, Artur

10  Ayvazyan, Marietta Terebelian, and others used and caused to be used

11  stolen, fictitious, and synthetic identities of other individuals,

12  including persons out of the country and a dead person, as well as

13  the names of businesses not controlled by defendant or her co-

14  conspirators, in order to submit false and fraudulent applications

15  for EIDL and PPP loans.  This information included, but was not

16  limited to, names used by co-defendant Richard Ayvazyan like "Iuliia

17  Zhadko," and names used by co-defendant Marietta Terabelian, like

18  "Viktoria Kauichko."  The information also included false and

19  fraudulent payroll reports and IRS Forms 940 and 941 that purported

20  to confirm the number of employees and amount of payroll expenses;

21  false certifications that the loan proceeds would be used for

22  permissible business purposes; and the names of identity theft

23  victims, including the names of dead people.

24       Defendant further conspired and agreed with her husband, Artur

25  Ayvazyan, to create false and fraudulent documentation in support of

26  loans, including through the use of templates for creating false and

27  fraudulent documents that were found on Artur Ayvazyan's phone.

28  Defendant further admits that records and items found at her

15

residence, at which she lived with co-defendant Artur Ayvazyan, included: fake identification documents; fraudulently obtained credit cards belonging to fake, synthetic and stolen identities including names used to apply for PPP and EIDL loans; checks and checkbooks in the names of individuals and businesses who applied for PPP and EIDL loans; copies of PPP and EIDL loan applications including in her own name and the names of others; and fake and stolen notary stamps and seals belonging to state and federal courts.

Defendant submitted and caused to be submitted, and aided and abetted the submission of at least 151 fraudulent PPP and EIDL applications as part of the conspiracy and scheme in which she was a participant along with Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, Vahe Dadyan, and others.  Furthermore, text messages obtained from defendant's phone showed that defendant explicitly discussed plans for the conspiracy with co-defendant Richard Ayvazyan, including how to submit PPP and EIDL applications; how to obtain and falsify Employer Identification Numbers ("EINs") for businesses in PPP and EIDL applications; and how to create fake payroll reports.

Defendant also agreed with co-defendants Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, Vahe Dadyan, and others that the fraudulently obtained loan proceeds would be used to pay for personal expenses and not used to pay for authorized expenses under the PPP and EIDL programs.  In order to make these unauthorized payments, including for personal expenses, defendant agreed with co-defendants Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, Vahe Dadyan, and others to cause the fraudulently obtained loan proceeds to move through bank accounts over which defendant and co-defendants Richard

Ayvazyan, Marietta Terabelian, Artur Ayvazyan, and Vahe Dadyan, and others had signatory authority, in order to conceal the true nature and source of the funds flowing through the accounts.

For example, in furtherance of the conspiracy to commit wire fraud and bank fraud, on or about April 22, 2020, defendant, together with co-defendants Richard Ayvazyan, Marietta Terabelian, Artur Ayvazyan, and others, submitted and caused to be submitted to Wells Fargo bank an application in the name of Secureline Realty and Funding, Inc. ("Secureline Realty") seeking a PPP loan in the amount of $122,838, which application: (a) falsely represented that Secureline Realty had eight employees, including employees for whom it had paid wages and payroll taxes; and (b) falsely certified Secureline Realty would use the loan proceeds only for permissible business purposes.  On or about May 9, 2020, defendant, together with other co-conspirators, submitted and caused to be submitted to Comerica Bank another application in the name of Secureline Realty seeking a second PPP loan, this one in the amount of $137,500, which application again falsely represented that Secureline Realty had eight employees, including employees for whom it had paid wages and payroll taxes, and falsely certified Secureline Realty would use the loan proceeds only for permissible business purposes.

In reliance on the false statements and representations in the applications, on or about May 7, 2020, Wells Fargo identified as Lender D in the first superseding indictment) deposited, by means of interstate wire, approximately $122,838 into a Wells Fargo bank account in the name of Secureline Realty, and on or about May 11, 2020, Comerica Bank (identified as Lender E in the first superseding

indictment) deposited, by means of interstate wire, $137,500 into a Comerica Bank account in the name of Secureline Realty.

Thereafter, defendant, together with co-defendant Richard Ayvazyan and others, caused a check for approximately $136,000 to be drawn on May 27, 2020, on the Secureline Realty account at Comerica Bank, and a check for approximately $120,010 to be drawn on June 12, 2020, on the Secureline Realty account at Wells Fargo.  Defendant, together with co-defendant Richard Ayvazyan and others, caused both checks to be deposited into other bank accounts, including a Bank of America account for Inception Ventures for which co-defendant Richard Ayvazyan was the sole signatory.  As defendant knew and agreed, these monies were the proceeds of unlawful activity, and specifically, the PPP and EIDL bank and wire fraud scheme.  The defendant and her co-conspirators then wired and caused to be wired these fraud proceeds to Encore Escrow, and co-defendants Richard Ayvazyan and Marietta Terebelian used such proceeds as part of the purchase price of their personal residence on Topeka Avenue, in Tarzana, California.

As another example of the actions taken in furtherance of the conspiracy, defendant agreed with co-defendant Vahe Dadyan to fraudulently apply for a PPP loan in the name of Vahe Dadyan's company Voyage Limo.  On May 18, 2020, defendant and her co-conspirators submitted and caused the submission of a PPP loan application to Celtic Bank that falsely stated that Voyage Limo had 11 employees and average monthly payroll expenses of $63,000, and that Voyage Limo would use the loan proceeds solely for business-related purposes.  Defendant and her co-conspirators also submitted and caused the submission of fake IRS Forms 940 and 941 to Celtic Bank in support of the PPP loan application.  On May 18, 2020, in

reliance on the false information in the application, Celtic Bank deposited, by means of an interstate wire, $157,000 to a Voyage Limo bank account over which co-defendant Vahe Dadyan had signatory authority.  In furtherance of the conspiracy, on July 3, 2020, co-defendant Vahe Dadyan, working together with the defendant and others, caused $155,000 of the fraudulently obtained PPP loan proceeds to be wired to a Bank of America account in the name of Runyan Tax Services, held in the name of "Viktoria Kauichko," a name defendant knew was used in furtherance of the bank fraud and wire fraud and money laundering conspiracy.  The co-conspirators, including Richard Ayvazyan and Marietta Terebelian, then used these PPP-derived funds as part of a down payment on a property located on Calle La Primavera, in Glendale, California, which was purchased in the name of "Iuliia Zhadko," which the defendant and her co-conspirators knew was used by co-defendant Richard Ayvazyan.

As a further example of the conspiracy, on or about August 13, 2020, defendant and her husband, co-defendant Artur Ayvazyan, submitted via interstate wiring an application for a $244,500 PPP loan to Newtek Small Business Finance in the name of "A.D. DBA Six Star Farms."  Defendant and co-defendant Artur Ayvazyan knew that the application included false information; namely, that the business had 22 employees including employees for whom A.D. paid wages and payroll taxes, and that A.D. would use the loan proceeds only for permissible purposes.  In support of the application, defendant and co-defendant Artur Ayvazyan submitted to Newtek Small Business Finance a California Driver's license purportedly belonging to A.D., and a fake Form 941, which falsely represented that it had been prepared by A.F., a professional tax preparer, and signed by A.D.  Defendant knew

that A.D. and A.F. were real persons.  In truth and in fact, as the defendant well knew, neither A.D. nor A.F. authorized the defendant, co-defendant Artur Ayvazyan, or any of the other co-conspirators to use their names or identifying information.  On or about August 17, 2020, in reliance on the false and fraudulent information included in the PPP loan application defendant and co-defendant Artur Ayvazyan had submitted, Newtek Small Business Finance deposited by means of an interstate wire approximately $244,500 to a bank account at Capital One in the name of A.D. that co-defendant Artur Ayvazyan controlled.

During the course of the conspiracy and in furtherance of it, defendant and her co-conspirators, Richard Ayvazyan, Marietta Terebelian, Artur Ayvazyan, and others, submitted and caused the submission of approximately 151 PPP and EIDL loan applications containing false and fraudulent information by which they attempted to obtain approximately $21.9 million and did obtain approximately $18,016,141.26.  By submitting materially false and fraudulent documentation in support of the PPP and EIDL loan applications, and by making materially false and fraudulent statements to SBA-approved and FDIC-insured lenders, defendant knowingly, and with the intent to defraud, schemed to obtain, and obtained, funds under the custody and control of Lenders A, B, C, D, E, G, and H, and placed such lenders at risk of financial loss.  The conspiracy was carried out using sophisticated means, including the use of false businesses, stolen identities, a network of bank accounts opened in the names of those false businesses, and the production of fraudulent documents including identity documents.  Indeed, the defendant used coordinated and repetitive steps to carry out and conceal the scheme, including falsifying tax and payroll documents and using bank accounts with

deceptive names to conceal the nature, location, source, and
ownership of PPP and EIDL loan proceeds.

## SENTENCING FACTORS

20.   Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate between the mandatory minimum and up to the maximum set
by statute for the crimes of conviction.

21.   Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. §§ 2X1,1; 2b1.1(a)(1)] |
| Specific Offense Characteristics | | |
| Amount of loss >$9,500,000 | +20 | [U.S.S.G. §§ 2X1,1; 2B1.1(b)(1)(K)] |
| Sophisticated Means: | +2 | [U.S.S.G. § §§ 2X1,1; 2B1.1(b)(10)(C)]   ] |
| Conviction under 18 U.S.C. § 1956 | +2 | [U.S.S.G. § 2S1.1(b)(2)(B) |

Defendant and the Offices reserve the right to argue that additional
specific offense characteristics, adjustments, and departures under
the Sentencing Guidelines are appropriate.  Defendant further
understands that the Court must sentence defendant to a term of two

21

(2) years imprisonment on count 24, which must run consecutive to any term of imprisonment imposed for counts one and 26.

22. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

23. Defendant and the Offices reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

24. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel - at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

1      g.   The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4      h.   Any and all rights to pursue any affirmative defenses,

5  Fourth Amendment or Fifth Amendment claims, and other pretrial

6  motions that have been filed or could be filed.

7                  <u>WAIVER OF APPEAL OF CONVICTION</u>

8      25.  Defendant understands that, with the exception of an appeal

9  based on a claim that defendant's guilty pleas were involuntary, by

10 pleading guilty defendant is waiving and giving up any right to

11 appeal defendant's convictions on the offenses to which defendant is

12 pleading guilty.  Defendant understands that this waiver includes,

13 but is not limited to, arguments that the statutes to which defendant

14 is pleading guilty are unconstitutional, and any and all claims that

15 the statement of facts provided herein is insufficient to support

16 defendant's pleas of guilty.

17            <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

18     26.  Defendant agrees that, provided the Court, before

19 imposition of the mandatory consecutive sentence of two (2) years'

20 imprisonment on count 24, imposes a term of imprisonment no more than

21 the high-end of the Sentencing Guidelines range calculated by the

22 Court, defendant gives up the right to appeal all of the following:

23 (a) the procedures and calculations used to determine and impose any

24 portion of the sentence; (b) the term of imprisonment imposed by the

25 Court; (c) the fine imposed by the Court, provided it is within the

26 statutory maximum; (d) to the extent permitted by law, the

27 constitutionality or legality of defendant's sentence, provided it is

28 within the statutory maximum; (e) the amount and terms of any

restitution order, provided it requires payment of no more than $18,016,141.26; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

27. The Offices agree that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) before imposition of the mandatory consecutive sentence of two (2) years' imprisonment on count 24, the Court imposes a term of imprisonment no less than the low-end of the Sentencing Guidelines range calculated by the Court, the Offices give up their right to appeal any portion of the sentence, with the exception that the Offices reserve the right to appeal the amount of restitution ordered if that amount is less than $18,016,141.26.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

28. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the Offices will be relieved of all of their obligations under this agreement; and (b) should the Offices choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of

this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

29. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the Offices may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the Offices and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with the Offices and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the Offices.

EFFECTIVE DATE OF AGREEMENT

30. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an attorney for the Offices.

BREACH OF AGREEMENT

31. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the Offices may declare this agreement breached. All of defendant's obligations are material, a single breach of this

agreement is sufficient for the Offices to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the Offices in writing.  If the Offices declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the Offices will be relieved of all their obligations under this agreement.

32.  Following the Court's finding of a knowing breach of this agreement by defendant, should the Offices choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible. Defendant also agrees that any such statements can be used to cross-examine her should she take the stand at trial of any co-defendant or in any other matter.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

33. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the Offices' sentencing recommendations or the parties' agreements to facts or sentencing factors.

34. Defendant understands that defendant and the Offices are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 21 are consistent with the facts of this case. While this paragraph permits the Offices and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the Offices' obligations not to contest the facts agreed to in this agreement.

35.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

36.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the Offices and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//
//
//
//
//
//
//

1            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2       37.   The parties agree that this agreement will be considered

3  part of the record of defendant's guilty plea hearing as if the

4  entire agreement had been read into the record of the proceeding.

5  AGREED AND ACCEPTED

6  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7  CALIFORNIA

8  TRACY L. WILKISON
   Acting United States Attorney
9

10 _____               June 14, 2021
   CATHERINE S. AHN                          Date
11 SCOTT PAETTY
   BRIAN FAERSTEIN
12 Assistant United States Attorneys

13
   DANIEL S. KAHN
14 Acting Chief
   United States Department of Justice
15 Criminal Division, Fraud Section

16 CHRISTOPHER FENTON
   Trial Attorney
17 United States Department of Justice
   Criminal Division, Fraud Section
18

19                                          6-14-21
20 _____              Date
   TAMARA DADYAN,
21 Defendant

22                                          6-14-21
   _____              Date
23 FRED MINASSIAN
   Attorney for Defendant TAMARA
24 DADYAN

25                CERTIFICATION OF DEFENDANT

26     I have read this agreement in its entirety.  I have had enough

27 time to review and consider this agreement, and I have carefully and

28 thoroughly discussed every part of it with my attorney.  I understand

                        29

1  the terms of this agreement, and I voluntarily agree to those terms.

2  I have discussed the evidence with my attorney, and my attorney has

3  advised me of my rights, of possible pretrial motions that might be

4  filed, of possible defenses that might be asserted either prior to or

5  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

6  of relevant Sentencing Guidelines provisions, and of the consequences

7  of entering into this agreement. No promises, inducements, or

8  representations of any kind have been made to me other than those

9  contained in this agreement. No one has threatened or forced me in

10  any way to enter into this agreement. I am satisfied with the

11  representation of my attorney in this matter, and I am pleading

12  guilty because I am guilty of the charges and wish to take advantage

13  of the promises set forth in this agreement, and not for any other

14  reason.

16  TAMARA DADYAN                    Date 6/4-21
     Defendant

18                  CERTIFICATION OF DEFENDANT'S ATTORNEY

19      I am TAMARA DADYAN's attorney. I have carefully and thoroughly

20  discussed every part of this agreement with my client. Further, I

21  have fully advised my client of her rights, of possible pretrial

22  motions that might be filed, of possible defenses that might be

23  asserted either prior to or at trial, of the sentencing factors set

24  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

25  provisions, and of the consequences of entering into this agreement.

26  To my knowledge: no promises, inducements, or representations of any

27  kind have been made to my client other than those contained in this

28  agreement; no one has threatened or forced my client in any way to

1    enter into this agreement; my client's decision to enter into this

2    agreement is an informed and voluntary one; and the factual basis set

3    forth in this agreement is sufficient to support my client's entry of

4    guilty pleas pursuant to this agreement.

5

6                                                        6-14-21

7    FRED MINASSIAN                                      Date
     Attorney for Defendant TAMARA
8    DADYAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    31