JERRY KAPLAN, ESQ. Bar No. 49142
JOSEPH BENINCASA, ESQ. Bar. No. 251347
Kaplan, Kenegos and Kadin
Attorneys at Law
9150 Wilshire Boulevard Suite 175
Beverly Hills, California 90212
Email: kapkenkd@pacbell.net
Telephone:(310) 859-7700
Facsimile:(310) 859-7773

Attorneys for Defendant
TAMARA DADYAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>TAMARA DADYAN,<br><br>Defendant. | CASE NO.    2:20-CR-00579-SVW-4<br><br>**MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN; REQUEST FOR HEARING** |

Defendant Tamara Dadyan submits this Motion to Withdraw her plea of Guilty, entered on June 14, 2021, pursuant to Federal Rule of Criminal Procedure, Rule 11(d)(2)(B).  The grounds for this request are that the defendant was pressured into entering a guilty plea to charges and acts of which she was not guilty, including of a factual basis that contained false statements of fact.  Defendant's counsel, Fred Minassian, committed <u>Strickland</u> error when he advised the defendant to enter the guilty plea to acts that she did not commit, rather than plead open to the charges of which she was guilty and proceeding to trial on the charges of which she

was innocent.  The defendant now faces a substantially higher sentence for acts she did not commit and fairness and justice require she be permitted to withdraw her guilty plea prior to sentencing, enter a guilty plea to only those charges and facts of which she is guilty, and proceed to trial on the remaining counts.

Defendant requests a hearing on this Motion prior to her scheduled sentencing of October 18, 2021.  Defendant will move separately for a continuance of the sentencing date due to the presentence investigation report being filed less than 35 days prior to sentencing.


Date:   September 24, 2021                         Respectfully submitted,

                                                     /s/ Jerry Kaplan
                                                   JERRY KAPLAN
                                                   Attorneys for Defendant
                                                   TAMARA DADYAN

MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN

# TABLE OF CONTENTS

I.      STATEMENT OF FACTS.................................................   5

II.     COURTS SHOULD LIBERALLY GRANT MOTIONS TO
        WITHDRAW A GUILTY PLEA PRIOR TO IMPOSITION
        OF SENTENCE FOR ANY "FAIR AND JUST REASON".......   8

III.    DEFENDANT SHOULD BE PERMITTED TO WITHDRAW
        HER PLEA, ENTER AN OPEN GUILTY PLEA TO THE
        CHARGES OF WHICH SHE IS GUILTY, AND PROCEED
        TO TRIAL ON THE REMAINING COURTS........................   10

IV.     CONCLUSION...........................................................   12

MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN

# TABLE OF AUTHORITIES

## CASES

Kadwell v. United States, 315 F.2d 667, 670 (1963). . . . . . . . . . . . . . . . . . . . . . .   9

Kercheval v. United States, 274 U.S. 220, 224 (1927). . . . . . . . . . . . . . . . . . . .   9

Nunez Cordero v. U.S., 533 F.2d 723, 725 (1976). . . . . . . . . . . . . . . . . . . . . . .   9

U.S. v. DeSimone, 736 F.Supp.2d 477, 486 (2015). . . . . . . . . . . . . . . . . . . . . .   10

U.S. v. Joslin, 434 F.2d 526, 531 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

United States v. Craig, 985 F.2d 175, 179 (1993). . . . . . . . . . . . . . . . . . . . . . .   9

United States v. Cray, 47 F.3d 1203, 1207 (1995). . . . . . . . . . . . . . . . . . . . . . .   10

United States v. Couto, 311 F.3d 179, 185 (2002). . . . . . . . . . . . . . . . . . . . . . .   9

United States v. Tolson, 372 F.Supp.2d 1, 9 (2005). . . . . . . . . . . . . . . . . . . . . .   10

United States v. Torres, 129 F.3d 710, 715 (1997). . . . . . . . . . . . . . . . . . . . . . .   9

United States v. Webster, 468 F.2d 769, 771 (1972). . . . . . . . . . . . . . . . . . . . . .   8-9

## CODES

Federal Rule of Criminal Procedure, Rule 11(d)(2)(B). . . . . . . . . . . . . . . . . . . .   8

**MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

Defendant was arrested on November 5, 2020 pursuant to a Complaint filed on November 3, 2020.  An indictment was filed on November 17, 2020, against the defendant and three co-conspirators, which included her husband, Artur Ayvazyan, and her brother-in-law, Richard Ayvazyan (ECF #32).  The government was ordered to produce all outstanding discovery by March 15, 2021 (ECF #105).   On March 9, 2021, the First Superseding Indictment was filed, adding four (4) new defendants and twenty-one (21) new charges.  The government also provided notice on March 9 that the case was a "Complex Case".  On April 6, 2021, the government provided a letter to defense counsel titled "Discovery Production Volume 17" which brought the total discovery produced to date up to 154,481 pages.  Including all discovery,

Trial was set for June 15, 2021, just two months later.  Co-defendant Vahe Dadyan moved to continue the trial, which the defendant joined.  Vahe Dadyan and the defendant both indicated that counsel had not had the opportunity to go over all the discovery with the client and needed additional time to prepare for trial.  The request to continue was denied on June 10, 5 days before trial, likely in no small part due to the misguided joinder to defendant Richard Ayvazyan's and his counsel's opposition to an earlier request to continue filed by the government.  (Defendant Richard Ayvazyan, the leader of the conspiracy has fled the country after losing at trial, leaving his co-defendants to face the consequences).

Once the request to continue was denied, Mr. Minassian suddenly attempted to acquire a plea for Ms. Dadyan.  Desperate and pressured plea negotiations continued through the weekend before trial, resulting in Ms. Dadyan signing a plea agreement just one day before trial.  The plea

**MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN**

agreement required the defendant to admit to a number of untrue statements, including that she "submitted and caused to be submitted, and aided and abetted the submission of at least 151 fraudulent PPP and EIDL applications…" (Plea Agreement, 16:9).  In fact, the defendant was involved in only 4 applications.  Most of the remaining applications and loans she didn't even know about, much less participate in.

The Court, well versed in the facts of the case, addressed this issue during the plea colloquy (26:19 – 27:21):


THE COURT:          "…it says you [Ms. Dadyan] caused the submission of 151 loan applications and attempted to receive 21 million and received 18…But did you know that at the time?  Were you familiar with every loan application in this case?"

MS. DADYAN:          "Not all of it, but—"

THE COURT:          "So I mean why did the government that in there?"

MS. AHN, AUSA:     "Your Honor, it's the position of the government that given Ms. Dadyan's role in the conspiracy, it was reasonably foreseeable to her that the scheme in the conspiracy would cause the submission of—"

THE COURT:          "That may very well be, but this is the factual basis of the guilty plea.  It seems that unless I'm misunderstanding, that she wasn't tabulating and counting the applications. She said she didn't know about all of them.  She's admitted that she knew about the other ones that are in the plea agreement.  Why was it necessary to put that in the plea agreement?"

MS. AHN:          "That was for the basis of relevant conduct and the loss, Your Honor."

THE COURT:          "So that by agreeing to that, your position is that at the time of sentencing then that becomes relevant conduct."

6

**MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN**

MS. AHN:                "Yes, Your Honor."

THE COURT:             "Do you agree, Mr. Minassian?"

MR. MINASSIAN:    "Yes, Your Honor, I do."


     In other words, the Court correctly noted that this intentional misstatement of facts in the factual basis would cause all 151 loans, and all $21 million in intended losses, to apply to Ms. Dadyan, and her counsel agreed that by admitting to things that were factually incorrect in the plea agreement, his client would receive a much harsher guideline range and sentence. Yet, he still advised her to enter into it.

     Mr. Minassian had been advised by his client, on multiple occasions including via text message, that Ms. Dadyan had not been involved in all 151 loans and that she didn't even know about most of them. In fact, Mr. Minassian had asked her specifically to identify the loans she was involved in, which she did. The only loans she was involved in were for her own businesses and her husband's and cousin's applications. Ms. Dadyan correctly noted that co-defendant Manuk Grigoryan accepted a plea for $1.5 to $3 Million in losses based on his involvement, and that co-defendant Paronyan had pleaded to a loss amount of less than $550,000 for his limited involvement. Mr. Minassian stated that he had attempted to get the government to change the plea agreement, but that "There is no more negotiation." Mr. Minassian then told Ms. Dadyan that she had to accept the agreement or lose at trial and receive "20 plus years."

     Ms. Dadyan specifically broached the topic of an open plea to only some of the counts – the ones she was actually guilty of – and not the entirety of Richard Ayvazyan's scheme. She was told that "pleading open means you have to say guilty to every single count." This, of course, is not accurate. A defendant may plead to any number of specific counts and proceed to

**MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN**

trial on the others.  Mr. Minassian either did not understand this or refused to entertain it, advising his client that she had to take the deal.

Ms. Dadyan still resisted the plea, even the morning of the hearing, stating that "they need to understand…I didn't do the loans."  Mr. Minassian merely replied that "We will argue that" at sentencing.  Mr. Minassian then stated that the plea agreement was for a level 23, 46-57 months, or "5.5 years" in prison, and they could then argue down the loss amounts.  In fact, the plea agreement actually called for a level 31, 108-120 years in prison, plus a 2 year mandatory consecutive term on Count 24.  Ms. Dadyan's guideline range is 11 to 13 years based on the factually false plea agreement her attorney pressured her into signing.

After the entry of the plea on June 14, 2021, the defendant sought outside counsel to examine her case and what she felt like was an improper plea agreement.  Undersigned counsel entered the case at a hearing on August 30, 2021, and immediately notified the Court of his intention to examine the case in order to withdraw the plea.

## II.

## COURTS SHOULD LIBERALLY GRANT MOTIONS TO WITHDRAW A GUILTY PLEA PRIOR TO IMPOSITION OF SENTENCE FOR ANY "FAIR AND JUST REASON"

Federal Rule of Criminal Procedure, Rule 11(d)(2)(B) governs the withdrawal of pleas prior to sentencing when "the defendant can show a fair and just reason for requesting the withdrawal."

"It has long been clear that leave to withdraw a guilty plea should be freely granted prior to sentencing where there is a fair and just reason for doing so."  United States v. Webster, 468

MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN

F.2d 769, 771 (1972).  "It should be liberally allowed." <u>Nunez Cordero v. U.S.</u>, 533 F.2d 723, 725 (1976).  "If the request was made because appellant thought he had a defense, permission to withdraw 'should be rather freely granted.'" <u>U.S. v. Joslin,</u> 434 F.2d 526, 531 (1972). Withdrawal should be permitted if the plea has been "unfairly obtained or given through ignorance, fear or inadvertence." <u>Kercheval v. United States</u>, 274 U.S. 220, 224 (1927).  This policy is justified because of the public interest in protecting an accused's right to a jury trial. <u>Kadwell v. United States</u>, 315 F.2d 667, 670 (1963).

When moving to withdraw a plea based on ineffective assistance of counsel, counsel's performance must fall "below an objective standard of reasonableness" and the defendant must show that but for counsel's dereliction, "there is a reasonable probability that [defendant] would not have pleaded guilty and would have insisted on going to trial." <u>United States v. Craig</u>, 985 F.2d 175, 179 (1993).

In general, to determine whether the defendant has shown a "fair and just reason" to justify withdrawal, a district court considers (1) whether the defendant has asserted her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea. <u>United States v. Couto</u>, 311 F.3d 179, 185 (2002).  Courts may also look to whether the defendant has "raise[d] a significant question about the voluntariness of the original plea." <u>United States v. Torres</u>, 129 F.3d 710, 715 (1997).

Prejudice to the government "has never been a determinative factor" and "should only be relevant in close cases, as considerations of prosecutorial resources generally ought not to deny a defendant the 'opportunity to go to trial because he had earlier entered a defective (e.g.,

**MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN**

involuntary) guilty plea.'" United States v. Tolson, 372 F.Supp.2d 1, 9 (2005); quoting United States v. Cray, 47 F.3d 1203, 1207 (1995).

## III.

## DEFENDANT SHOULD BE PERMITTED TO WITHDRAW HER PLEA, ENTER AN OPEN GUILTY PLEA TO THE CHARGES OF WHICH SHE IS GUILTY, AND PROCEED TO TRIAL ON THE REMAINING COUNTS

The defendant entered her guilty plea under great pressure from her counsel, who incorrectly advised her of the law regarding the plea, i.e., that she could not plead open to only those counts to which she was guilty, and to proceed to trial on the remaining counts.   In addition, he not only misadvised her as to the possible guideline sentence, but he also advised her to sign a factual basis that he knew was false.  Such conduct falls well below the "objective standard of reasonableness," and but for counsel's dereliction, there is a reasonable probability that she would have pleaded not guilty and insisted on going to trial, and therefore the defendant should be allowed to withdraw her plea.  U.S. v. DeSimone, 736 F.Supp.2d 477, 486 (2015) [counsel advising client to admit factual basis he knew was wrong constitutes "fair and just reason" for withdrawal].

The defendant has timely asserted her desire with withdraw her plea due to ineffective assistance of counsel at her plea, rendering the plea non-voluntary as she was pressured to admit facts that were false, exposing her to a substantially higher guideline range.  Prior to, and during, the change of plea hearing, she asserted her innocence to certain charges and conduct which is contained in the factual basis. to which she has now wrongly admitted.  Her attorney knew she was innocent of this conduct and knew that the factual basis contained materially false

statements, yet threatened her with 20 years in prison if she failed to agree to the plea as written. He further misstated that it was impossible to only plead to some counts and proceed to trial on the others, even after she expressly asked him if she could do that. The defendant is actually innocent of the vast majority of the fraudulent loans and has a defense to those charges.

Defendant presumes that the government will oppose this motion – despite the fact that the defendant clearly agreed to a false factual basis - on the grounds that permitting her to do so will prejudice the government. As noted above, prejudice to the government "has never been a determinative factor" and "should only be relevant in close cases, as considerations of prosecutorial resources generally ought not to deny a defendant the 'opportunity to go to trial because he had earlier entered a defective (e.g., involuntary) guilty plea.'" United States v. Tolson, 372 F.Supp.2d 1, 9 (2005); quoting United States v. Cray, 47 F.3d 1203, 1207 (1995).

While it is true that a trial of Ms. Dadyan, after the trial of her co-defendants has already been completed, would cause the inconvenient expenditure of prosecutorial resources, the prejudice is not so significant as to justify denying the defendant a fair trial against charges that she – on the record – claimed she was innocent. The United States has already prepared all exhibits and there are no witnesses that are now unavailable. Indeed, such a trial would be extensively streamlined, as the only issue would be whether Ms. Dadyan partook in the fraudulent loans of the conspiracy leader, not whether such fraudulent loans were committed. Mere inconvenience to the government are not grounds to deny the defendant's request to withdraw her plea when she has presented a fair and just reason, has timely done so, has claimed her actual innocence, and has a defense to the charges. This is not simply a matter of a defendant getting cold feet after the fact. This defendant stated on the record that she was not involved in the 151 loans she falsely agreed to in the factual basis, and this Court rightly was concerned.

MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN

While it was unfortunate that the United States insisted on the false factual basis in order to permit the defendant to plea, her counsel should have insisted on a trial rather than advising her to lie, should have advised her about the fact she could plead open only to those charges of which she was actually guilty, and should have proceeded to trial on the remaining charges of which she was innocent.

## IV.

## CONCLUSION

Based on the foregoing, the defendant respectfully requests a hearing on this motion and that the Court grant her request to withdraw her plea.

Date:    September 27, 2021

Respectfully submitted,

  /s/ Jerry Kaplan
JERRY KAPLAN
Attorneys for Defendant
TAMARA DADYAN

MOTION TO WITHDRAW GUILTY PLEA OF DEFENDANT TAMARA DADYAN