JERRY KAPLAN, ESQ. Bar No. 49142
JOSEPH BENINCASA, ESQ. Bar. No. 251347
Kaplan, Kenegos and Kadin
Attorneys at Law
9150 Wilshire Boulevard Suite 175
Beverly Hills, California 90212
Email: kapkenkd@pacbell.net
Telephone:(310) 859-7700
Facsimile:(310) 859-7773
Attorneys for Defendant
TAMARA DADYAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA | CASE NO.     2:20-CR-00579-SVW-4 |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | |
| TAMARA DADYAN, | |
| Defendant. | |

Defendant Tamara Dadyan submits this Sentencing Memorandum for consideration at her Sentencing, currently scheduled for December 6, 2021.  For the reasons stated below, a sentence of 24 months incarceration will be sufficient, but not greater than necessary, to satisfy the goals of sentencing as determined by Congress.

Date:   November 29, 2021                              Respectfully submitted,

   /s/ Jerry Kaplan
JERRY KAPLAN
Attorneys for Defendant
TAMARA DADYAN

**1**
**DEFENDANT'S SENTENCING MEMORANDUM**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The defendant pleaded guilty on June 14, 2021.  Shortly thereafter, the defendant filed a Motion to Withdraw her plea based on ineffective assistance of counsel, to wit, that her prior counsel, Fred Minassian, misadvised her to admit to a factual basis that contained false statements.  The Motion is under submission and defendant will not seek to re-litigate it here; however, defendant notes that the crux of her argument was that due to her counsel's errors and poor advice, the defendant admitted to a loss amount that exposed her to a significantly higher sentence than she would have faced had she pleaded open to the counts of which she was actually guilty and proceeded to trial on the remaining counts.  Her counsel told her she had to accept the agreement or lose at trial and receive "20 plus years."  To the shock of no one, and despite the promises of Mr. Minassian regarding her plea, the government is seeking 21 years and 7 months imprisonment.

The defendant's brother-in-law, co-defendant Richard Ayvazyan, was the mastermind of this scheme and received the vast majority of the funds from the conspiracy.  Richard's brother, co-defendant Artur Ayvazyan, is the defendant's husband.  Richard Ayvazyan used the defendant and her husband's home to store materials used in his scheme – notary stamps, bank information, and stolen or forged identities.  Richard also showed the defendant how to apply for loans for her own company and that of her husband's.  Ms. Dadyan owed Richard Ayvazyan for a personal loan he made to her and her husband, and Richard advised her that she could apply for a loan for her business and pay him back.  Ms. Dadyan then applied for fraudulent loans for her own company, and assisted her husband and her cousin, Vahe Dadyan, in making their own

DEFENDANT'S SENTENCING MEMORANDUM

applications.  The defendant did not receive monies beyond the money from her own loans.  The defendant used her own name and her company's name to apply for the loans.  While it is true that she transferred some of her loan proceeds to an escrow account belonging to Richard Ayvazyan, this was money that she and her husband owed Richard for a prior unrelated family loan that he requested she pay into escrow.  Ms. Dadyan denies that she assisted or participated in the application, processing, or laundering of any other monies involved in the conspiracy and had no involvement in any other part of the scheme.

This defendant respectfully disagrees with the Guideline range proposed by the Presentence Investigation Report, and asserts that her proper Guideline offense level should be 21, calculated as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | USSG §2B1.1(b)(1) |
| Loss Amount ($732,838) | 14 | USSG §2B1.1(b)(1)(H) |
| Money Laundering | 2 | USSG §2S1.1(b)(2)(B) |
| Mitigating Role | -2 | USSG §3B1.2 |
| Acceptance of Responsibility | -2 | USSG §3E1.1(a) |
| Total Offense Level: | **19** | |

Defendant's Criminal History Category is properly calculated as level I.  Defendant's guideline range is therefore 30-37 months.  Defendant was also convicted of a violation of 18 U.S.C. §1028A, resulting in an additional two years of imprisonment, to be applied consecutively.

Total Guideline Range:  54-61 months imprisonment.

**DEFENDANT'S SENTENCING MEMORANDUM**

Based on the defendant's relevant conduct and the sentences received by her co-defendants, a sentence of 24 months imprisonment will be sufficient, but not greater than necessary, to achieve the aims of sentencing.

## II.

## LOSS CALCULATION

The defendant was wrongfully advised to admit to a loss calculation of $21.7 Million. As noted in the defendant's texts and emails to her counsel, as well as her plea colloquy to the Court, the defendant was only involved in four loans totaling $732,838.[1] The defendant noted multiple times in confidential conversations with Mr. Minassian (since waived) that she was doing Richard a favor by letting him store the materials in her home and that he, his wife, co-defendant Marietta Terabelian, and co-defendant Manuk Grigoryan, were the primary actors in the conspiracy.

Pinkerton liability does not translate directly into sentencing culpability. U.S. v. Collazo, 984 V.3d 1308, 0334 (9th Cir. 2021).[2] The guidelines acknowledge that they do not establish standards of criminal liability as stated in application notes to §1B1.3:

---

[1] Or $661,838, based on the admissions of the factual basis. Both amounts result in the same loss calculation.

[2] See Also: United States v. McClatchey, 316 F.3d 1122, 1127-29 (10th Cir. 2003) (conviction of conspiracy does not make defendant responsible under § 1B1.3 for all reasonably foreseeable bribes paid by his coconspirators; the bribes must also fall within the scope of the defendant's joint undertaking); United States v. Soto-Piedra, 525 F.3d 527, 531-33 (7th Cir.) ("Conspiracy liability . . . is generally much broader than jointly undertaken criminal activity under section 1B1.3. . . . Actions of coconspirators that a particular defendant does not assist or agree to promote are generally not within the scope of that defendant's jointly undertaken activity."), cert. denied, 129 S. Ct. 261, 172 L. Ed. 2d 195 (2008); United States v. Swiney, 203 F.3d 397, 404 (6th Cir. 2000) ("[T]he Sentencing Guidelines have modified the Pinkerton theory of liability so as to harmonize it with the Guidelines' goal of sentencing a defendant according to the 'seriousness of the actual conduct of the defendant and his accomplices.'") (quoting Wilkins & Steer, supra) (distinguished in United States v. McIntosh, 236 F.3d 968, 974 (8th Cir. 2001)); United States v. Lanni, 970 F.2d 1092, 1093 (2d Cir. 1992) ("[A]n important distinction exists

**DEFENDANT'S SENTENCING MEMORANDUM**

Sentencing Accountability and Criminal Liability.—The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. . . . [T]he focus [of the Guidelines] is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator.

U.S.S.G. §1B1.3, comment. (n.1)

The defendant applied for two loans for her company and helped her husband apply for one for his company.  The defendant also assisted her cousin, Vahe Dadyan, translate his application so he could apply for a loan.  She had no other involvement in the applying, processing, or laundering any other loans.  Although she texted with Richard Ayvazyan at times, she did not take part in or assist in any of his loans, or those of any other defendant besides her husband and cousin.  The proper loss adjustment is therefore +14 levels for the four loans in which defendant was involved USSG §2B1.1(b)(1)(H).


### III.

### VICTIM ADJUSTMENT

The defendant objects to a +2 adjustment pursuant to USSG §2B1.1(b)(2).  The defendant's relevant conduct involved four total loans through four banks.  Therefore, there are insufficient victims to support an adjustment for more than 10 victims.  The entire conspiracy involved 12 banks; however, the defendant was wrongly advised to enter a plea that admitted she

---

between the criminal law standard for convicting a defendant of conspiracy and the Guidelines standard for sentencing a defendant convicted of conspiracy."

**DEFENDANT'S SENTENCING MEMORANDUM**

was culpable for all $21.7 Million for every loan from 12 different banks. She is not, and should never have been advised to enter into a plea making such an admission.


## IV.

## SOPHISTICATED MEANS

The Presentence Report correctly notes that Application note 9 to USSG §2B1.1(b)(10) describes "sophisticated means" as especially complex or intricate conduct such as hiding assets or transactions through the use of fictitious entities, corporate shells, or offshore financial accounts. While it is true that the overall conspiracy involving Richard Ayvazyan was sophisticated and used a number of fake businesses and bank accounts to apply for and conceal the fraud, the same is not true from Ms. Dadyan. She, and her husband and cousin, used their real names and their legitimate companies to apply for loans. The fraud was in misstating employee numbers and the need for the funds, for which she must be held accountable and for which she readily admits and accepts responsibility. However, her loans were not sophisticated frauds and she did not conceal her identity or move the money through several different accounts, nor did she create false entities to or shell accounts and the like. The sophisticated means adjustment should not be applied to Ms. Dadyan's relevant conduct.


## V.

## MINOR ROLE

Contrary to the government's assertion, the defendant was not a leader or organizer. Indeed, she was not even an average participant, like Manuk Grigoryan. She was not involved with any loans outside hers and her husband's, and assisting in translating the application for her

DEFENDANT'S SENTENCING MEMORANDUM

cousin's loan.  She did not recruit anyone, give orders, or manage any other loans or the movement of money once the proceeds had been received.  Her primary involvement in the larger conspiracy was permitting her husband's brother to store notary stamps and identity information in her home.  She had no involvement in most of the loans and was involved in less than 4% of the loan proceeds.

## VI.

## 18 U.S.C. 3553(a) FACTORS

Title 18 of the United States Code, section 3553(a), governs sentencing. As the Supreme Court wrote in <u>Rita v. United States</u>, 127 S.Ct. 2456, 2462 (2007):

That provision tells the sentencing judge to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. The provision also tells the sentencing judge to "impose a sentence sufficient, but not greater than necessary, to comply with" the basic aims of sentencing as set out above. [Emphasis omitted.]

A sentence of 24 months imprisonment will satisfy the goals stated in 18 U.S.C. §3553(a).

**1.      The nature and circumstances of the offense and the history and characteristics of the defendant.**

The defendant is a 42 year-old wife and mother of two daughters, ages 13 and 15.  Her husband of 17 years is co-defendant Arthur Ayvazyan.  Arthur was sentenced to 60 months imprisonment for his role in the offense and faces deportation as a result of the conviction and sentence, meaning Ms. Dadyan will likely be left to raise their two daughters alone.  Ms. Dadyan

**DEFENDANT'S SENTENCING MEMORANDUM**

was born in Armenia but is a United States citizen, having arrived in the United States at age 6 when her family fled the political upheaval in that country.  After fleeing first to Russia and then to Europe, her parents finally made it to America.  Her parents had nothing when they arrived and took jobs as a seamstress and driver, respectively.  She lived with her parents and her two brothers in her grandmother's small apartment.  Her parents slept in the living room and were gone most of the time to work.  Eventually her parents purchased a home, but it was foreclosed upon and she and her family were separated for six months while they tried to find a home.

Ms. Dadyan finished school, received an associate's degree, and then became a real estate agent.  The first home she purchased from her earnings was for her parents, where they still live today.  Ms. Dadyan and her husband, who started a trucking business, both worked hard and have been able to make good lives for themselves and their family.  The defendant has no criminal history.

As is common among people's who grow up in poverty and as refugees, Ms. Dadyan developed strong financial insecurity.  Even as she was able to achieve success in the real estate business and provide for her family and her parents, she sometimes felt like there was never enough to be truly safe.  Although she had never committed a crime, when her husband's brother, Richard Ayvazyan, discussed his idea to defraud the government by applying for Covid Business Loans, the defendant was sadly tempted to see if she could acquire these government funds as well.  Her husband assured her that Richard was trustworthy and that anyone and everyone was applying for these loans whether they needed it or not.  While it was true that her business was suffering during the pandemic, she admittedly filed applications for loans for her business that contained false information in order to acquire more money than she was entitled to receive.  She

also helped her husband apply for a loan for his business and she assisted her cousin, Vahe Dadyan, in applying for a loan as well.

The defendant admitted her involvement to her attorney early on and made it clear she didn't want to fight the case in trial. However, upon urging from her husband and her attorney, Fred Minnassian, she agreed to let Richard Ayvazyan's attorney run the case. Her counsel simply joined a multitude of mostly baseless motions filed by Richard's counsel and was shocked to learn that, as trial approached, her counsel had done nothing to prepare and had not even begun discussing a possible plea with the government. On the eve of trial, after her requested continuance was denied, her attorney desperately "negotiated" a plea that contained false statements regarding the extent of the defendant's involvement. Feeling she had no choice but to do as her attorney instructed, she pleaded guilty pursuant to the one-sided "agreement." She is now at the mercy of the Court to sentence her according to her actual conduct, and not the hastily and negligently concocted plea agreement.

As noted above, the defendant has no criminal history and has been steadily employed throughout her adult life. She is close with her children, her parents, and her brothers, and, aside from this disastrous mistake, has been a law abiding and valuable member of her community. She has not violated a single condition of her supervised release and has remained working and taking care of her children during this case. Unlike her co-defendants Richard Ayvazyan and Marietta Terabelian, she has not sought to flee or avoid facing the consequences of her crime.

**2.      The punitive, deterrent, public safety, and rehabilitative needs for the sentence imposed.**

The defendant is not a drug or alcohol addict, is educated, does not suffer from mental health issues, and has no criminal record. Her actions in this case are completely contrary to the

rest of her life, and she therefore he has no rehabilitative needs.  The public is not endangered by her release despite the government's protestations, as shown by her lack of any criminal record and her performance on release.  Nor can deterrence, at least as to this defendant, be a serious consideration.  Her life has already been turned upside down by her and her husband's actions, and he is going to prison for 5 years.  Her real-estate license will likely be suspended or she may lose it all together.  Her only concern now is staggering any likely prison time with her husband so her children are not left without a parent and then putting in the work again to rebuild her life and start over.  She is well aware that she faces prison time for her role in the offense, and the two years required by the aggravated identity theft charge are more than sufficient to deter any future criminal temptation.

She understands the need of the government and the public to mete out punishment for law breakers.  She accepts that consequence of her actions.  However, any punishment that involves incarceration beyond the two years will serve more punish her parents and children, who rely on her to support and care for them.  A lengthy prison sentence, such as the 22 years requested by the government, serves less to punish and more to simply feed the sadistic need of some people in the government to completely destroy and throw away the life of someone who makes a first time mistake.  24 months incarceration is more than sufficient to satisfy the needs of sentencing, including punishment, and any additional prison time does nothing but magnify the suffering already being experienced by her family.  The defendant's age, criminal history, education, work history, family ties, and mental health status make recidivism extremely unlikely.

///

///

**3.     The kinds of sentence available.**

The court is not prohibited from any sentencing option.  Count 24, for 18 U.S.C. §1028A requires a consecutive 2 year prison term.

**4.     The Guidelines sentencing range.**

The parties disagree as to the guideline range; however, the defendant contends that the proper range is 30 to 37 months with a mandatory 24 month consecutive term for the 1028A charge. The defendant requests a sentence of 24 months incarceration.

**5.     Policy statements.**

The Sentencing commission does not appear to have drafted any relevant policy statements.  However, the cost of incarcerating this non-violent and non-threatening defendant is approximately $37,500 per year according to the Bureau of Prisons, a cost that serves neither to protect the public nor advance any other aim of sentencing.  The defendant is already obligated to pay restitution.  The entirety of that restitution will be lost by incarcerating the defendant for any period near what the government recommends.

**6.     The need to avoid unwarranted sentence disparities.**

The highest sentence received by any co-defendant in this case was appropriately for Richard Ayvazyan, for 17 years for his role in the entirety of the $21.7 Million conspiracy.  He and his wife have both fled the country and abandoned their children rather than face the consequences of their conduct.

Her husband, Arthur Ayvazyan, received 5 years for his involvement after losing at trial. Her cousin, who she assisted by translating the application for him, received 1 year and 1 day after going to trial.   Manuk Grigoryan, who was heavily involved and made nearly $3.4 Million from the scheme, received 6 years incarceration.  The defendant is most similar to defendant

Paronyan, who pleaded guilty, and who was involved in approximately $430,187 in loans. He received 30 months for his involvement; however, Mr. Paronyan had a somewhat extensive criminal history, noted to be category III but reduced to category II at sentencing.

A sentence anywhere close to the 22 years requested by the government would be a gross miscarriage of justice. Based on the guidelines, her criminal history, her personal history, and the sentences of her co-defendants, a sentence of 24 months is exactly in line with her co-defendants based on her relevant conduct in the case.

7. **The need to provide restitution to any victims of the offense.**

As noted, the defendant will be ordered to pay restitution, which he will do according to a payment plan instituted upon a financial evaluation. The defendant is currently working and prepared to make full restitution, provided she will be able to remain employed after any sentence.

## VII.

## CONCLUSION

Based on the foregoing, the defendant respectfully requests a sentence of 24 months incarceration.

Date:   November 29, 2021                    Respectfully submitted,

                                             _/s/ Jerry Kaplan
                                             JERRY KAPLAN
                                             Attorneys for Defendant
                                             TAMARA DADYAN