UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:20-cr-00579-SVW | Date: 12/6/2021 |

Present: The Honorable: **STEPHEN V. WILSON, U.S. DISTRICT JUDGE**

Interpreter  NA

| Paul M. Cruz | N/A | N/A |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Tamara Dadyan | | | X | N/A | | | |

**Proceedings:** ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA [998]

Before the Court is Defendant Tamara Dadyan's motion to withdraw her guilty plea. Mot. to Withdraw Plea of Guilty, ECF No. 998 ("Mot."). For the reasons below, the application is DENIED.

## I.    Factual Background

On November 5, 2020, Defendant Tamara Dadyan was arraigned on criminal charges for her role in a conspiracy to fraudulently obtain funds from the government's Covid-19 economic relief programs. Complaint, ECF No. 1; Minutes of Initial Appearance, ECF No. 20. Defendant was indicted on twenty-three counts, including charges for bank fraud, wire fraud, conspiracy to commit bank and wire fraud, aggravated identity theft, and money laundering. First Superseding Indictment, ECF No. 154. [1] Defendant Dadyan was indicted along with seven others, including her husband, Artur Ayvazyan, and several other members of her family. *Id.*

The government alleged that the conspirators submitted fraudulent applications for relief funds from the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program ("EIDL"), in some instances using "synthetic" identities – stolen from unwitting victims – and creating fake business entities. *Id.* ¶¶ 1-32. The government alleged that the conspirators submitted at least 151 fraudulent loan applications, seeking over $21 million in proceeds and receiving at least $18 million. *Id.*

Defendant Dadyan was represented by retained counsel, Fred Minassian. Each of the eight defendants obtained independent counsel, however, in many respects, the co-defendants collaborated in pursuit of joint defense efforts.

---

[1] Defendant Dadyan was charged in Counts 1-20, 24, 26, and 33 of the First Superseding Indictment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

On April 16, 2021, the Court issued an order consolidating the trials of all defendants and setting trial for June 15, 2021. ECF No. 284. As the trial date grew closer, several defendants continued to explore the possibility of a plea deal with the government, including Defendant Dadyan. On June 10, 2021, the Court issued an order denying the Defendants' request for a continuance of trial. ECF No. 492.

On the eve of trial, June 14, 2021, Defendant Dadyan agreed to a plea deal with the government; the Court accepted her change of plea that same day. ECF No. 539. At the change of plea hearing, the Court went to great length to question Defendant Dadyan and ensure that her guilty plea was knowing, voluntary, and supported by a sufficient factual basis. As the Court summed it up at the close of the hearing, "You realize, Ms. Dadyan, this is a very significant day in your life. I'm just trying to make sure that you're doing this with your eyes wide open. That is my concern. Are you?" Hr'g Tr. 29:21-25, June 14, 2021, ECF No. 995 ("Plea Hr'g Tr."). Dadyan confirmed that she was, and the Court accepted her guilty plea. *Id.* at 30:1-13.

Several other defendants also pled guilty prior to trial, while four defendants – Tamara Dadyan's husband, Artur Ayvazyan, her in-laws, Richard Ayvazyan and Marietta Terabelian, and her cousin, Vahe Dadyan – proceeded to trial. Artur Ayvazyan and Vahe Dadyan were found guilty on all counts with which they were charged, while Marietta Terabelian was found guilty on 21 of 22 counts and Richard Ayvazyan was found guilty on 24 of 28 counts. Jury Verdict Form, ECF No. 644.

A few months after trial, prior to her sentencing, Defendant Tamara Dadyan filed a request to substitute her counsel, replacing Fred Minassian, who had represented her thus far, with Jerome Kaplan. ECF No. 879. The Court granted the request on August 30, 2021. ECF No. 899.

At the end of September, Defendant Dadyan filed this motion to withdraw her guilty plea, asserting that her former attorney, Fred Minassian, had induced her to plead guilty by giving her erroneous legal advice and pressuring her to accept the government's plea deal. On November 10, 2021, the Court held an evidentiary hearing on the motion, including testimony from both Minassian and Dadyan. *See generally*, Hr'g Tr., Nov. 10, 2021, ECF No. 1182 ("Mot. Hr'g Tr.").

**II.     Legal Background**

A guilty plea is a "grave and solemn act, which is accepted only with care and discernment." *United States v. Hyde*, 520 U.S. 670, 676 (1997) (internal citations and quotations omitted). For that reason, before accepting a guilty plea, "the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).

A guilty plea may be involuntary when entered simply because the defendant's attorney is unprepared for trial. *United States v. Moore*, 599 F.2d 310, 313 (9th Cir. 1979). However, an attorney urging their client to take a plea deal – even while using candid or colorful language – is generally not enough to render a guilty plea involuntary. *See, e.g., United States v. Mitchell*, 633 F.3d 997, 1002 (10th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL

Prior to sentencing, Rule 11 permits withdrawal of a guilty plea where "the defendant can show a fair and just reason" for it. Fed. R. Crim. P. 11(d)(2)(B). While this standard is "applied liberally," a defendant may not withdraw her plea "'simply on a lark.'" *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (quoting *Hyde*, 520 U.S. at 676-77). A guilty plea is not a "temporary and meaningless formality reversible at the defendant's whim." *Hyde*, 520 U.S. at 676 (internal citations and quotations omitted). Although Rule 11 sets a lower a bar for withdrawing a guilty plea prior to sentencing than is required to withdraw a plea after sentencing, it is still the defendant's burden to show a "fair and just reason." Fed. R. Crim. P. 11(e); *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005).

"Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea. *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). Under Rule 11, a plea may be withdrawn even if it was made voluntarily, knowingly, and intelligently. *United States v. Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005).

### III. Analysis

Defendant Dadyan puts forth three arguments in support of her motion to withdraw her guilty plea.[2] First, Dadyan argues that her former counsel, Mr. Minassian, unduly pressured her to take the plea agreement because he was unprepared for trial, making her plea involuntary. Mot. 5, 10. Second, she argues that Minassian gave her erroneous legal advice by telling her that she could not enter an "open" plea (i.e., a guilty plea entered without any plea deal from the government) unless she pled to all counts. Mot. 11. And third, she argues that Minassian induced her to agree to a "false" factual basis for the plea agreement that wrongly attributed responsibility to her for all 151 loan applications submitted by the co-conspirators, when she was actually only "involved in" four loans. Mot. 5-7, 10.

Defendant Dadyan's first argument is unsupported by the facts and fails to demonstrate that her plea was involuntary. Her second argument relies on advice from Minassian that – though it could have created a mistaken impression as to a minor point about pleading open – was essentially correct in its key point regarding of the effect of entering an open plea. Thus, it does not present adequate grounds for withdrawing her guilty plea. Her final argument fares no better: it does not present a "fair and just reason" for withdrawing her plea because there is nothing "false" about the factual basis underlying her plea. Accordingly, Defendant Dadyan's motion is denied.

#### A. Dadyan's plea was voluntary.

Defendant Dadyan argues that her counsel coerced her into pleading guilty because he was unprepared for trial, thus making her plea involuntary. However, the record indicates that Minassian was

---

[2] In her initial motion, Defendant also asserted a fourth argument – that Mr. Minassian had incorrectly advised her of the sentencing recommendation provided for in the plea agreement. Mot. 8, 10. However, Defendant's reply papers retracted this argument, noting that it was based on a misunderstanding of communications between Defendant Dadyan and Mr. Minassian. Reply to Mot. 9 n.4, ECF No. 1110.

adequately prepared for trial and did not unduly coerce Dadyan. As Dadyan affirmed multiple times, including under careful questioning from this Court, her plea was her own voluntary choice.

A guilty plea that is involuntary is invalid. *Garcia*, 401 F.3d at 1012. A defendant "showing that his plea was *not* voluntary would be 'the most important factor' *supporting* withdrawal." *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)) (emphasis in original). Thus, if a defendant shows that her plea was involuntary and thus invalid, that is sufficient – though it is not necessary – to constitute a "fair and just reason" for withdrawal of the plea under Rule 11(d)(2)(B). *Id.*

"A plea entered because counsel is unprepared for trial is involuntary." *Moore*, 599 F.2d at 313. Thus, a plea is invalid where a defendant pleads guilty simply because they fear the consequences from proceeding to trial with an attorney who is too unprepared to present an effective defense. *See id.* However, courts have also recognized that an attorney urging his or her client to take a plea deal does not render a guilty plea involuntary when the attorney does so because of the strength of the government's case – not simply because of their own lack of preparation. *See Mitchell*, 633 F.3d at 1002.

Here, Defendant argues that Minassian was unprepared for trial, panicked when the Court denied a continuance on June 10, desperately sought a plea deal from the government and jumped on its offer, and then pressured her into agreeing to the deal. Mot. 5-6, 10. However, the factual record simply belies these contentions.

First, nothing suggests that Minassian was unprepared for trial. Defendant's central assumption underlying her theory is that Minassian had barely reviewed any of the discovery materials, evidenced by the fact he only accessed a database of discovery productions maintained by Steptoe & Johnson LLP on two occasions.[3] *See id.*, Ex. A; Mot. Hr'g Tr. 8:10-18. However, as Minassian explained at the hearing on this motion, that was not the *only* way to view discovery materials – it was also produced to the parties on hard drives. Mot. Hr'g Tr. 8:12-9:1. Minassian stated that he reviewed all of the discovery as it was produced, but he used the hard drives rather than the Steptoe & Johnson database. *Id.* at 7:22-25, 8:19-9:1.

Minassian also maintained that he frequently discussed discovery materials and their implications with Defendant Dadyan. *Id.* at 9:5-21. Defendant Dadyan disputes this, claiming at the evidentiary hearing that the only discussions regarding the contents of discovery that she had were with Richard Ayvazyan. *Id.* at 43:13-23, 45:6-11.

The Court finds Minassian's testimony at the hearing to be credible. And moreover, the Court finds Defendant Dadyan's statements to the contrary to not be credible – at one point in the hearing, she claimed to have never seen the screenshots of fraudulent loan applications and extensive text messages with Richard Ayvazyan that were found in the search of her personal phone. *Id.* at 54:15-55:14. The notion that these materials somehow ended up on Dadyan's private cell phone without her ever seeing or

---

[3] Attorneys from Steptoe & Johnson represent Richard Ayvazyan. Pursuant to a joint defense agreement between the co-defendants, the firm maintained a database of discovery materials that each defendant's counsel could access. Mot. Hr'g Tr. 8:10-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

knowing about them is simply beyond the bounds of credulity, and it undermines the credibility of her statements at the hearing.

Further, Mr. Minassian responded to interrogatories propounded by the government in connection with this motion in which he affirmed that he carefully reviewed the discovery in this case. Fred Minassian's Resp. to Government's Interrog. Nos. 4-7, 22, ECF No. 1089 ("Resp. to Interrog."). Thus, the facts simply do not support Defendant Dadyan's contention that her counsel had hardly reviewed the evidence in this case.

Nor is there any other indication that Mr. Minassian was inadequately prepared for trial. Minassian had been Defendant Dadyan's attorney for the entirety of the case.[4] He contends that he spent approximately 30 hours per week working on the case, which clearly would have been sufficient to stay on top of any developments and prepare for trial. *See id.* No. 4. The mere fact that he joined an effort to obtain a trial continuance does not imply that Minassian was unprepared. Indeed, in screenshots of text messages with Minassian that Defendant Dadyan submitted, Dadyan herself tells Minassian to seek a continuance to avoid going to trial. Reply to Mot., Ex. C 29, 33, ECF No. 1110-3.

Put simply, nothing suggests that Minassian was unprepared for trial. Nor does anything suggest that Dadyan accepted the government's plea deal simply because she believed Minassian was unprepared for trial. None of the extensive communications submitted by Defendant so much as hint at needing to avoid trial because of a lack of preparation. *See generally, id.* Thus, Defendant Dadyan has not shown that her plea was involuntary because it was entered due to her counsel being unprepared. *See Moore*, 599 F.2d at 313.

To be sure, Mr. Minassian did urge Dadyan to avoid trial by taking the government's plea deal. Minassian readily admits as much in his responses to the government's interrogatories. Resp. to Interrog. No. 17. However, the record is clear that he did so because of the strength of the government's case and Dadyan's own desire to avoid trial – not because of any lack of preparation.

In the text conversations that Defendant Dadyan submitted, Minassian frequently reiterates the strength of the government's case against her. Reply to Mot., Ex. C at 24, 35, 44, 50, 54. In one instance, Minassian offers a frank assessment: "the evidence from your phone is so bad." *Id.* at 50. This assessment was well-founded; as the Court has detailed in previous orders, the search of Defendant Dadyan's home and phone yielded overwhelming evidence of her extensive involvement in the conspiracy – second only to Richard Ayvazyan. *See, e.g.,* Government Trial Ex. ("GEX") 10 at 1-70; GEX 57.

Indeed, this evidence formed much of the government's case against the four defendants who proceeded to trial, which resulted in their conviction on virtually all counts. *See* Jury Verdict Form. The Court observed this voluminous evidence first-hand at trial, which provided overwhelming support for the guilt of all defendants, including Dadyan. Minassian's encouragement to take the plea deal reflected

---

[4] Indeed, Defendant Dadyan indicated – and Minassian confirmed – that Minassian was not just her counsel in this case but had been her go-to attorney and a family friend for over 25 years. Mot. Hr'g Tr. 7:15-21, 44:23-45:5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

an accurate assessment of the strength of the government's case and a pragmatic recommendation to avoid the potentially more severe sentencing consequences of a likely conviction at trial. *See* Resp. to Interrog. No. 17.

Moreover, this recommendation was consistent with the desire to avoid trial that Dadyan herself had expressed all along. In his responses to the government's interrogatories, Minassian indicates that Dadyan had frequently and "emphatically" reiterated that she did not want to go to trial. Resp. to Interrog. Nos. 8, 9, 11-14, 16. This is corroborated by the text messages that Defendant submitted, in which she repeatedly told Minassian that she had no intention to go to trial. Reply to Mot., Ex. C 24-25, 32.

It is true that, at times, Minassian was perhaps a bit colorful in urging Dadyan to take the deal. In one message, he told Dadyan, "if you go to trial, you will lose your life." *Id.* at 54 (cleaned up). It is unsurprising that Minassian was somewhat evocative. As Minassian explained at the evidentiary hearing, his concern was sincere: he was trying to underscore to Dadyan that the risk of conviction on all counts could be a sentence of twenty or more years, which he viewed as "life-changing numbers" for someone that was not only a client, but also a family friend. Mot. Hr'g Tr. at 7:15-21, 31:7-20, 44:23-45:5.[5]

However, the mere fact that Minassian occasionally used blunt or even colorful language does not mean that he was engaged in a level of coercion that made Dadyan's plea involuntary. *See Mitchell*, 633 F.3d at 1002 (concluding that defendant's plea was voluntary even where counsel told him "you would be a fool not to take this plea offer!"); *see also United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996) (concluding that defendant's plea was voluntary even where counsel called him "stupid" and an "idiot" for initially resisting the offer).

In sum, nothing suggests that Defendant Daydan entered her guilty plea involuntarily. She did not enter her plea simply because her counsel was unprepared for trial. The record indicates that Minassian was well-prepared for trial; because of his attention to the case, he was able to accurately indicate to Dadyan the overwhelming strength of the government's case against her. The fact that he did so – candidly and bluntly – means that he did as any competent attorney should have in the situation, not that he somehow coerced Dadyan into involuntarily pleading guilty.

Instead, considering the risks of continuing to litigate, Defendant Dadyan chose to accept the government's plea deal and plead guilty. And in doing so, she repeatedly affirmed that she voluntarily made that choice – both by signing the plea agreement and during the plea colloquy, in which the Court took great care to ensure that her plea was voluntary. *See* Plea Agreement 29-30, ECF No. 525; Plea Hr'g Tr. 4:5-7:3; 29:21-30:1. The arguments Defendant Dadyan now presents to the contrary are unsupported by the facts and do not establish that her plea was involuntary.

---

[5] Indeed, Minassian's estimate was not far off, as Richard Ayvazyan, the most similarly situated defendant to Dadyan, was sentenced to 17 years after his conviction at trial. J. & Commitment, ECF No. 1167.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

### B. Any inaccuracy in Minassian's advice regarding the Court's authority in an "open" plea does not present a "fair and just reason" to withdraw the guilty plea.

Defendant Dadyan argues that her counsel inaccurately advised her regarding this Court's ability to dismiss the remaining counts if she entered an "open" guilty plea on some counts. An "open" guilty plea is a plea not pursuant to any agreement with the government. While part of Minassian's advice may have given Dadyan a mistaken understanding of the Court's powers in an open plea, it does not constitute a sufficient basis for withdrawal of Dadyan's guilty plea, which *was* pursuant to a deal with the government.

"Erroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal." *McTiernan*, 546 F.3d at 1167. A defendant must show that his counsel's erroneous legal advice "plausibly *could* have motivated his decision to plead guilty." *Id.* (citing *Davis*, 428 F.3d at 808) (emphasis in original).

Here, Defendant's communications with Mr. Minassian discussed the possibility of an "open" plea to certain counts. Reply to Mot., Ex. C 48-51. Defendant Dadyan asked why she could not plead open to the counts based on "[her] own" loans, and Minassian, seeking to dissuade her, told Dadyan, "[b]ecause they will still go to trial on the other counts including count 33. [] To plead open means you have to enter a guilty plea to all counts, [Judge Wilson] will not accept any other way." *Id.* at 49-51 (cleaned up). Similarly, in other messages, Dadyan again asks why she cannot plead open, and Minassian replies with, "Because you would get killed! [] [Judge] Wilson will kill you." *Id.* at 48 (cleaned up).

While Minassian's statement that the court would not accept an open plea might imply that the Court had this authority, the Court could not have simply dismissed the other charges upon an open guilty plea; the Court could only do so pursuant to a motion from the government or if there was legal cause to dismiss the charges. *See United States v. Hall*, 559 F.2d 1160, 1164 (9th Cir. 1977) (citing *United States v. De Diego*, 511 F.2d 818, 825 (D.C. Cir. 1975) ("A trial judge has no discretion to end prosecutions unless there are legal grounds for the exercise of discretion.")). Here, there were no legal grounds, such as an indictment that failed to state an offense or violation of Defendant's speedy trial rights, that would have justified dismissal of the charges absent a motion by the government. *See* Fed. R. Crim. P. 7(c)(1), 12(b)(3), 48(b).

And if Dadyan entered an open guilty plea as to some counts but not others, the government surely would have continued to prosecute her on the remaining counts, as it had every right to do. As Minassian explained, the government's position in negotiations was that it never believed that Dadyan was only involved in four loans, but rather, it saw her as an "integral player" to the entire conspiracy. Mot. Hr'g Tr. 18:3-8. The government would not allow Dadyan to "minimize her involvement," rather it insisted that she "take full responsibility." *Id.* at 25:11-13.

Thus, the government would not have simply dismissed the remaining charges if Dadyan entered an open guilty plea. Indeed, Minassian correctly advised Defendant Dadyan of this fact: "they [the government] will still go to trial on the other counts." Reply to Mot., Ex. C at 50. As was discussed even at the plea colloquy, by virtue of Dadyan's participation in the conspiracy, she could be held criminally

liable for the entire conspiracy's efforts, not just the few loans for which she was willing to take responsibility. Plea Hr'g Tr. 26:19-27:23

Fundamentally, Dadyan pled guilty based on her assessment of the consequences of taking the government's plea deal compared to the risks of continuing to litigate. As Minassian correctly pointed out to her, the government's case against her was extremely strong, and continuing to trial was likely to result in being convicted on virtually all counts, as were the four defendants who proceeded to trial, and facing more severe sentencing consequences. *See id.* at 24, 35, 44, 50, 54; Jury Verdict Form. Though Dadyan may have wished to plead guilty to the few counts she felt responsible for and have the rest simply dismissed, this was not possible – the government would not agree to dismiss the other charges, and the Court lacked any other basis to dismiss the counts. Thus, the essential point of Minassian's advice was correct: Dadyan could not just plead guilty to the counts of her choosing and have the other charged counts magically disappear.

Under these circumstances, Minassian's reference to the Court not accepting an open plea could not have plausibly motivated Dadyan to enter her guilty plea. *See McTiernan*, 546 F.3d at 1167. Accordingly, Defendant Dadyan's argument does not present a "fair and just reason" to withdraw her guilty plea. *See id.*

### C. The factual basis underlying Dadyan's plea is not "false" or incorrect.

Dadyan's final argument is that Minassian coerced her into signing a plea agreement with a "false" factual basis. For the reasons discussed in Section III.A, there is no merit to the contention that Minassian coerced Dadyan into pleading guilty. However, this final argument fails for a more fundamental reason – there is nothing "false" or incorrect about the factual basis contained in the plea agreement.

Before accepting a guilty plea, a court must ensure that the plea is supported by an adequate factual basis, confirming that the facts admitted by the defendant justify the charges to which she is pleading guilty. Fed. R. Crim. P. 11(b)(3). Defendant cites one case for the proposition that a "fair and just reason" for withdrawal exists where an attorney instructed the defendant to admit to a factual basis that the defendant contended was false and professed his factual innocence: *United States v. DeSimone*, 736 F. Supp. 2d 477, 486 (D.R.I. 2010). *See* Mot. at 10.

However, even accepting this legal premise, there is nothing "false" about the factual basis here. Dadyan's entire argument is that the factual basis in the plea agreement falsely attributes responsibility for all 151 loan applications and all $21 million in intended loss from those applications to her when she was not actually "involved" in all 151 loans. Mot. 7-8. To support this argument, Dadyan submitted text messages to Minassian where she repeatedly insists that she "didn't do" all of the loans . Reply to Mot., Ex. C 27, 37, 41, 43-44, 54, 65. Defendant Dadyan maintains that the factual basis of the plea agreement was false because, as she put it to Minassian, "I'm being forced to sign something I didn't do. I'll pay all the loans I have done, nothing to do with their 9 to 20 million period." *Id.* at 65.[6] Even at the evidentiary

---

[6] The "9 to 20 million" presumably refers to the calculation of the intended loss from the conspiracy. The plea agreement contained a loss calculation of approximately $21 million, which for purposes of the sentencing guidelines offense level determination, falls in the $9.5 -- $25 million bracket. U.S.S.G. § 2B1.1(b)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

hearing, Dadyan continued to protest that she "didn't do 151 loans" and that she should only have to be responsible for "her own loans." Mot. Hr'g Tr. 45:3-5.

But the factual basis of the plea agreement never says that Dadyan "did" or personally submitted all 151 loans. The exact language of the factual basis states, "Defendant submitted and caused to be submitted and aided and abetted the submission of at least 151 fraudulent PPP and EIDL applications as part of the conspiracy and scheme in which she was a participant." Plea Agreement 17. This accurately reflects the fact that Defendant Dadyan did not personally submit all 151 loan applications – something that no one has ever contended – but she *did* aid and abet a conspiracy that collectively submitted 151 loan applications.

Importantly, Dadyan pled guilty to the conspiracy count. Plea Hr'g Tr. 3:17-4:1. And moreover, even now when she claims the factual basis was "false," Defendant Dadyan has never challenged the facts establishing her participation in the conspiracy. *See generally*, Mot. Nor could she plausibly contest those facts, since as previously discussed, Dadyan's phone contained overwhelming evidence of her extensive involvement in the conspiracy. *See* GEX 10 at 1-70.

It is well-established that a co-conspirator is responsible for the loss that results from "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense." U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Treadwell*, 593 F.3d 990, 1002 (9th Cir. 2010), *overruled on other grounds by United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020).

Thus, it was entirely proper for the plea agreement's factual basis to indicate that Dadyan aided and abetted the submission of 151 loan applications, even those submitted by other co-conspirators, such as Richard Ayvazyan. Those applications were in furtherance of the conspiracy and reasonably foreseeable to Dadyan given her direction of other co-conspirators and extensive communications with Richard Ayvazyan, the ringleader of the conspiracy, to carry out the fraud.

Indeed, *Treadwell* rejects the very arguments Dadyan puts forth in support of her position. *Treadwell* held that "a district court is not required to proceed item-by-item through a complete list of all losses attributed to a criminal conspiracy and to then make an individualized determination" as to each, as Defendant Dadyan would have the Court do by identifying the specific loans for which she is willing to take responsibility. 593 F.3d at 1002.

Similarly, Dadyan protested the loss calculation to Minassian because she claimed that Richard Ayvazyan received the lion's share of the fraudulent loan proceeds. Reply to Mot., Ex. C at 35-38, 40, 57. But in *Treadwell*, the Ninth Circuit rejected the contention that the loss attributable to a co-conspirator was limited to their personal share of the conspiracy's profits. 593 F.3d at 1004-05.

Thus, Minassian did not inappropriately pressure Dadyan to agree to a plea agreement that contained false statements of material facts. Rather, he correctly advised her that "it doesn't really matter whether it was her or Richard that "benefitted" from each individual loan. It's not going to reduce the loss amount as to her, even if Rich got all the money" because "conspiracy works where everyone is in it together, doesn't matter who gets the money." Reply to Mot., Ex. C at 37-38 (cleaned up); *see also* Mot. Hr'g Tr. 28:15-29:14, 36:9-17.

The Court probed this very issue at Defendant Dadyan's plea colloquy. The full exchange is excerpted below:

> THE COURT: There is a section here following the part I just read same page 20, it says you caused the submission of a 151 loan applications and attempted to receive 21 million and received 18. I mean, that is in the plea agreement. But did you know that at the time? Were you familiar with every loan application in this case?
>
> THE DEFENDANT: Not all of it, but –
>
> THE COURT: So I mean why did the government put that in there?
>
> MS. AHN: Your Honor, it's the position of the government that given Ms. Dadyan's role in the conspiracy, it was reasonably foreseeable to her that the scheme in the conspiracy would cause the submission of --
>
> THE COURT: That may very well be, but this is the factual basis of the guilty plea. It seems that unless I'm misunderstanding, that she wasn't tabulating and counting the applications. She said she didn't know about all of them. She's admitted that she knew about the other ones that are in the plea agreement. Why was it necessary to put that in the plea agreement?
>
> MS. AHN: That was for the basis of relevant conduct and the loss, Your Honor.
>
> THE COURT: So by agreeing to that, your position is that at the time of sentencing then that becomes relevant conduct?
>
> MS. AHN: Yes, Your Honor.
>
> THE COURT: Do you agree, Mr. Minassian?
>
> MR. MINASSIAN: Yes, Your Honor, I do. That's the reason how I explained it to my client.
>
> THE COURT: I see.

Plea Hr'g Tr. 26:19-27:23. Defendant mistakenly perceives this exchange as "the Court correctly not[ing] this intentional misstatement of facts." Mot. 7. The Court did not identify that statement in the factual basis as false. Instead, it inquired of counsel for the government why it was *necessary* to include the scope of the conspiracy's joint efforts in the factual basis of Defendant Dadyan's plea agreement. Ms. Ahn answered that inquiry to the Court's satisfaction by indicating that it was included because it would be relevant to the loss calculation at sentencing.

Ultimately, what Defendant Dadyan seems unwilling to accept – and what her new counsel seems unable to grasp – is that by pleading guilty to the conspiracy count, she is criminally liable for all of the loss that was reasonably foreseeable as a product of the conspiracy's efforts. U.S.S.G. § 1B1.3(a)(1)(B); *Treadwell*, 593 F.3d at 1002, *see* Mot. 7-8; Mot. Hr'g Tr. 45:3-5. Given her extensive,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

upper-level role in the conspiracy, that includes all 151 loan applications and all of the loss associated with those applications, and the plea agreement was correct to indicate as much.

At bottom, Defendant Dadyan's dispute is not with the accuracy of the factual basis in her plea agreement, nor what Minassian told her about the factual basis. Rather, Dadyan resists the law of conspiracy itself and the legal effect of the actions she took. Defendant Dadyan feels that she should only have to take responsibility for the loans she "did" or was "involved" with, which seem to be the four loan applications that she or her husband submitted or received the proceeds from. But that is simply not how the law treats criminal conspiracies. Instead, the law holds each co-conspirator responsible for the full scope of the harm caused by the conspiracy that was reasonably foreseeable to her. U.S.S.G. § 1B1.3(a)(1)(B); *Treadwell*, 593 F.3d at 1002; *see also Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946). As Mr. Minassian correctly advised Dadyan, she is responsible for the efforts of her co-conspirators, which the Court also underscored at the plea hearing.

Accordingly, Defendant Dadyan cannot show that Minassian coerced her into admitting a false factual basis for her plea because she has not shown any false statement or inaccuracy in the factual basis in the first place. Her argument therefore does not present a sufficient reason to permit withdrawal of her plea.

### IV. Conclusion

The Court recognizes that permission to withdraw a plea must be granted "liberally," but, on these facts, Defendant Dadyan has failed to present a "fair and just reason" to withdraw her guilty plea. *See* Fed. R. Crim. P. 11(d)(2)(B). Accordingly, the motion is denied.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| **Initials of Deputy Clerk** | PMC |