JERRY KAPLAN, ESQ. Bar No. 49142
JOSEPH BENINCASA, ESQ. Bar. No. 251347
Kaplan, Kenegos and Kadin
Attorneys at Law
9150 Wilshire Boulevard Suite 175
Beverly Hills, California 90212
Email: kapkenkd@pacbell.net
Telephone:(310) 859-7700
Facsimile:(310) 859-7773
Attorneys for Defendant
TAMARA DADYAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA | CASE NO.   2:20-CR-00579-SVW-4 |
| Plaintiff, | **EX PARTE APPLICATION FOR BAIL PENDING APPEAL PURSUANT TO 18 U.S.C. § 3143(B)** |
| vs. | |
| TAMARA DADYAN, | |
| Defendant. | |

Defendant Tamara Dadyan submits this Motion for release on bail pending the determination of her appeal pursuant to 18 U.S.C. § 3143(B). The grounds for this motion are that she is neither a flight risk nor a danger to the community, and presents substantial issues for appeal, at least one of which is novel in the Ninth Circuit and is likely to lead to a reversal, namely that the defendant and her lawyer at the time of the plea were simultaneously prosecuted by the same office, in which instance "the interests of lawyer and client may . . . diverge[] with respect to their dealing with that office," which may "present a plausible claim that his lawyer had an actual conflict of interest." *Armienti v. United States*, 234 F.3d 820, 824-25 (2d Cir. 2000).

The purported waiver, made without the advice of independent counsel, is insufficient to dissipate the taint. She also made an application to withdraw her plea, because it was based upon patent violations of the professional norms, obviously impacted by that conflict of interest and the need for that attorney to curry favor with the prosecution.

The defendant does not know the government's position on this Ex Parte Application.

### Statement of Facts

Defendant was arrested on November 5, 2020 pursuant to a Complaint filed on November 3, 2020. An indictment was filed on November 17, 2020, against the defendant and three co-conspirators, which included her husband, Artur Ayvazyan, and her brother-in-law, Richard Ayvazyan (ECF #32).

Prior to the arrest, counsel appearing for her in the case, Fred Minassian, had been indicted by a grand jury in the same district, on July 27, 2017, along with six others, on federal drug trafficking charges that allege they diverted at least two million prescription pills – including oxycodone and other addictive and dangerous narcotics – to the black market. Minassian was specifically charged with obstruction of justice for allegedly creating fraudulent medical records in an effort to deter the investigation. Although this defendant purported to waive any conflict, such waiver was based upon advice given by the conflicted attorney. She was never given the opportunity to consult with independent counsel.

Trial was set for June 15, 2021, just two months later. Co-defendant Vahe Dadyan moved to continue the trial, which the defendant joined. Vahe Dadyan and the defendant both indicated that counsel had not had the opportunity to go over all the discovery with the client and needed additional time to prepare for trial. The request to continue was denied on June 10, five days

before trial, likely in no small part due to the misguided joinder to defendant Richard Ayvazyan's and his counsel's opposition to an earlier request to continue filed by the government. (Defendant Richard Ayvazyan, the leader of the conspiracy has fled the country after losing at trial, leaving his co-defendants to face the consequences).

Once the request to continue was denied, Mr. Minassian suddenly attempted to acquire a plea for Ms. Dadyan. Desperate and pressured plea negotiations continued through the weekend before trial, resulting in Ms. Dadyan signing a plea agreement just one day before trial.

It is patent that Minassian was operating under a desire to curry favor with the prosecution in this case. As can be seen from the docket sheet, the Government sought a detention order against him (Doc. No. 37). Moreover, Minassian subsequently was engaged in discussions with the Government to obtain his passport for travel (Doc. Nos. 625-626).

The plea agreement required the defendant to admit to a number of untrue statements, including that she "submitted and caused to be submitted, and aided and abetted the submission of at least 151 fraudulent PPP and EIDL applications…" (Plea Agreement, 16:9). In fact, the defendant was involved in only 4 applications. Most of the remaining applications and loans she didn't even know about, much less participate in.

The Court, well versed in the facts of the case, addressed this issue during the plea colloquy (26:19 – 27:21):

THE COURT: "…it says you [Ms. Dadyan] caused the submission of 151 loan applications and attempted to receive 21 million and received 18…But did you know that at the time? Were you familiar with every loan application in this case?"

MS. DADYAN: "Not all of it, but—"

| | |
|---|---|
| THE COURT: | "So I mean why did the government that in there?" |
| MS. AHN, AUSA: | "Your Honor, it's the position of the government that given Ms. Dadyan's role in the conspiracy, it was reasonably foreseeable to her that the scheme in the conspiracy would cause the submission of—" |
| THE COURT: | "That may very well be, but this is the factual basis of the guilty plea. It seems that unless I'm misunderstanding, that she wasn't tabulating and counting the applications. She said she didn't know about all of them. She's admitted that she knew about the other ones that are in the plea agreement. Why was it necessary to put that in the plea agreement?" |
| MS. AHN: | "That was for the basis of relevant conduct and the loss, Your Honor." |
| THE COURT: | "So that by agreeing to that, your position is that at the time of sentencing then that becomes relevant conduct." |
| MS. AHN: | "Yes, Your Honor." |
| THE COURT: | "Do you agree, Mr. Minassian?" |
| MR. MINASSIAN: | "Yes, Your Honor, I do." |

In other words, the Court correctly noted that this intentional misstatement of facts in the factual basis would cause all 151 loans, and all $21 million in intended losses, to apply to Ms. Dadyan, and her counsel agreed that by admitting to things that were factually incorrect in the plea agreement, his client would receive a much harsher guideline range and sentence. Yet, he still advised her to enter into it.

Mr. Minassian had been advised by his client, on multiple occasions including via text message, that Ms. Dadyan had not been involved in all 151 loans and that she didn't even know about most of them. In fact, Mr. Minassian had asked her specifically to identify the loans she

was involved in, which she did. The only loans she was involved in were for her own businesses and her husband's and cousin's applications. Ms. Dadyan correctly noted that co-defendant Manuk Grigoryan accepted a plea for $1.5 to $3 Million in losses based on his involvement, and that co-defendant Paronyan had pleaded to a loss amount of less than $550,000 for his limited involvement. Mr. Minassian stated that he had attempted to get the government to change the plea agreement, but that "There is no more negotiation." Mr. Minassian then told Ms. Dadyan that she had to accept the agreement or lose at trial and receive "20 plus years."

Ms. Dadyan specifically broached the topic of an open plea to only some of the counts – the ones she was actually guilty of – and not the entirety of Richard Ayvazyan's scheme. She was told that "pleading open means you have to say guilty to every single count." This, of course, is not accurate. A defendant may plead to any number of specific counts and proceed to trial on the others. Mr. Minassian either did not understand this or refused to entertain it, advising his client that she had to take the deal.

Ms. Dadyan still resisted the plea, even the morning of the hearing, stating that "they need to understand…I didn't do the loans." Mr. Minassian merely replied that "We will argue that" at sentencing. Mr. Minassian then stated that the plea agreement was for a level 23, 46-57 months, or "5.5 years" in prison, and they could then argue down the loss amounts. In fact, the plea agreement actually called for a level 31, 108-120 years in prison, plus a two-year mandatory consecutive term on Count 24. Ms. Dadyan's guideline range is 11 to 13 years based on the factually false plea agreement her attorney pressured her into signing.

After the entry of the plea on June 14, 2021, the defendant sought outside counsel to examine her case and what she felt like was an improper plea agreement

Following a hearing, this Court denied the motion to withdraw the plea.

## Analysis

A defendant may be released pending appeal if she shows that: (1) she is not a flight risk or danger to public safety; (2) the appeal is not for purposes of delay; and (3) the appeal "raises a substantial question of law or fact likely to result in [a] reversal [or] an order for a new trial." 18 U.S.C. 3143(b)(1)(B)(i)-(ii); *see United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985) ("*Handy*"). An appeal raises a "substantial question" of law or fact is one that is "fairly debatable," and "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Id.* at 1283.

In allowing TAMARA DADYAN to remain free pending sentencing, the Court has already found that she is neither a flight risk nor danger to public safety. The appeal is not being undertaken for the purpose of delay, but rather to vindicate substantial constitutional rights. Therefore, the only issue before this Court is whether her appeal raises a substantial question that is likely to result in reversal or a new trial.

The Court is doubtless familiar with the issue concerning withdrawal of the plea. Although the Court rejected the motion, the determination of that issue surely presents a substantial issue for appeal. To be sure, the Ninth Circuit reviews a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion, see *United States v. Ruiz*, 257 F.3d 1030, 1033 (9th Cir. 2001) (en banc), but reversals for the refusal to allow withdrawal of a plea prior to the imposition of sentence are not infrequent. See, e.g., *United States v. Ruiz,* 548 F. App'x 410, 411 (9th Cir, 2013) (applying Ninth Circuit precedent and reversing). Thus, this issue, if successful on appeal, would lead to a reversal.

A more troublesome issue, which has apparently not been directly addressed by the Ninth Circuit in circumstances like these, involves the representation by counsel who is under indictment by the same prosecutor. It is basic that the guarantees of the Sixth Amendment entitle defendants in criminal cases the right to effective assistance of counsel, which includes the right to conflict-free representation. *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). Although there was a purported waiver, it is submitted that it was not a knowing and intelligent, and fully-counseled waiver of any conflicts of interest. See *United States. v. Schwayder*, 312 F.3d 1109, 1117–18 (9th Cir.2002); *Lockhart v. Terhune*, 250 F.3d 1223, 1232 (9th Cir.2001) (defendant's waiver of a conflict of interest must be knowing and intelligent, such that the defendant was sufficiently informed of the consequences of that choice).

This, too, constitutes an issue which, if successful on appeal, would lead to a reversal.

### Conclusion

Since the Court has already concluded that this defendant is not a flight risk or danger to the community, and there are at least two substantial questions of law that are likely to lead to reversal or an order for a new trial. Wherefore the Court should grant defendant's motion and set bail pending appeal on the same terms and conditions as her present release.

Date:   December 30, 2021                    Respectfully submitted,

                                                                                                  /s/ Jerry Kaplan
                                                                                                  JERRY KAPLAN
                                                                                                  Attorneys for Defendant
                                                                                                  TAMARA DADYAN